argument not to exceed 15 minutes per side. Mr. Meyer, you may proceed before the appellant. Thank you. May it please the court. I'm Kenyon Meyer and I represent Jeff Owen and I'd request two minutes in rebuttal time. Very well. After we filed the initial brief in this case, the United States Supreme Court decided a case called Cusisis. And I'd like to briefly touch on the impact of that case on a couple of our arguments, but I'd like to start with counts one and two. The law of this circuit stated in United States v. Sadler provided that quote, paying the going rate for a product does not square with the conventional understanding of deprive. And our argument in one and two, counts one and two, really related to that concept that in this case, Mr. Owen's wife and an entity applied for a loan. The loan is provided, the property is provided as security, a business is provided as security, and the bank got what it's bargained for. After we filed the initial brief, the United States Supreme Court mentioned the Sadler case and found that in order to sustain a fraud conviction, the defendant does not need to seek to cause the victim net pecuniary loss. And then there was a debate between the justices as to whether the central holding in Sadler, which is whether you get the benefit of the bargain, was dicta or not. My only point in raising this, in our briefs we focused on that, we said whether or not that is dicta is still an issue to be determined. But in this particular case, if one looks at the jury instructions for counts one and two, the requirement from Sadler, and this is the count two jury instruction, required the jury to find a financial loss. So I think that the case was tried under the law as it existed at the time of the case. And I think that... Well, wait a minute now. If there was intent to cause loss and there was misrepresentation, your client would still have a problem. Well, I think we are not contesting the fact that there was sufficient evidence to support a finding that there was deception. The argument really for all of the counts, all of the fraud counts, is whether a property interest of the bank was deprived, whether the creditor was deprived of a property interest. The argument of the United States for counts one and two was they entered the loan. And our argument was under Sadler, is under Sadler, and under the current jurisprudence, is that getting the benefit of the bargain is not depriving a victim of a property interest. The rest of the counts, our argument is that the allegation is that the creditors were unable to get property from Mr. Olin. And the recent United States Supreme Court confirmed the longstanding rule that in order for there to be actionable fraud, you have to deprive the victim of a property interest. And so here, for example, counts seven and eight, the argument is creditor has an $80,000 judgment. Mr. Olin lies in a deposition to effectively hide where his and his wife's assets are. So the argument is the creditor was not deprived of any property interest. They had a claim, they had a chosen action as the Adler case, the Fourth Circuit case, which really forms the basis of our argument, which is still good law in the Fourth Circuit. They had a property, they had a claim to recover assets of the Owens. The bank had a property interest at stake. There was an intent to defraud and misrepresentations in that regard. And the fraud was still actionable. You've got an intent to defraud, but you've got misrepresentation. And there's plenty of case law that says that that's sufficient to constitute fraud. I think that I agree with almost everything you're saying. There was sufficient evidence to support a claim that he lied. The question is, the fraud word in these federal fraud statutes incorporates common law concepts that require the victim to be deprived of a property interest that the victim owns. Here, the victim was attempting to get Mr. Olin's money. The creditor was not deprived of any property interest the creditor had. The creditor owned a claim and was unable to find money that Mr. Olin owned, but they weren't deprived of the claim. They still had the claim, they asserted the claim, they made the claim. The entire basis of the four of these counts is you lied to prevent the bank or the creditor from getting the Owens' assets. In the Adler case, unlike... About the collection process or the misrepresentations that caused the loan to be provided in the first place, such as when your client committed loan applications claiming that, for example, that Mr. Olin's wife's wages were being garnished and they were not being garnished, or when it was claimed that the loans were being applied for in order to purchase property in the wife's name, and all that was, in one way or the other, a misrepresentation. I mean, all these money laundering misrepresentations, the list of misrepresentations are just innumerable and under what you're saying, there would be no fraud as long as, or the fraud would be calculated based upon the financial loss, and you don't have to have financial loss in every factual scenario in order to satisfy the elements of fraud. That's what, I mean, do you have a case factually the same or extremely similar to this that you can cite to us? Well, so, Your Honor, we are not contesting the sufficiency of the evidence on the misrepresentations, so we're assuming for purposes of argument that there were lies. But the Sadler case and Justice Gorsuch's recent concurrence in the casesis talk about, and this would relate to counts one or two, a babysitter is asked, do you have a criminal background? They lie. I do not have a criminal background. They deceive the person into hiring them as a babysitter. The person serves as a babysitter and is paid, receives money, and Justice Gorsuch has said that is not an adequate deprivation of property because the fair market value of the transaction is what was received. Sadler, in this case, talks to me. Excuse me, counsel, just to stop you there on that hypothetical. The difference here, I would think, in the context of a collateralized loan is that when the misrepresentation goes to the availability of the collateral, you are not getting a full benefit of the bargain. It's not like Sadler where you're paying full price for drugs. It's not like the babysitter where you're paying the going rate for a babysitter and receiving the services. Here, the whole point of the fraud and the misrepresentations was to have the bank outlay its property in the form of a loan using collateral that, because of the misrepresentations, looked one way on paper but, in practice, was not sufficient to support the loan. Can you address that difference? Yes, ma'am. Just to be clear, this only relates to Councilman Winter, too. The lie is related to Kimberly Owens, whether or not she had a number of judgments. The Supreme Court case that you have mentioned affects only Counts 1 and 2. It does affect only Counts 1 and 2. I think it supports our arguments on Counts 3 through 8 because, number one, it required a deprivation of property of the victim. It also, Justice Thomas talked about the materiality element, which relates back to your question, Your Honor. The information that was concealed related to Kimberly Owens. That related to the decision of the bank of whether to allow her to be a guarantor. It didn't relate to the property. It didn't relate to the collateral. It didn't relate to the business. It was simply the babysitter. She is a borrower. She's a guarantor. They got her as a guarantor. They got what they bargained for. It's not a sham. She's the right human being. They didn't get what they bargained for from the standpoint of they bargained for a guarantor that had a specific set of liabilities that would support the terms of the loan. I presume that if Kimberly Owens were not available as the guarantor, there's testimony that if they knew the real situation with respect to the Owens' financial state, the loan would not have been proven in the first place. Correct. But there was not any evidence that terms would have changed. So it's the babysitter. The babysitter, we would have not hired her if we knew she was a felon. We would have not allowed her into our home. It's not what we bargained for. We bargained for a person that didn't have this issue. That's Kimberly Owens. There's no evidence that affected the terms because the theory was a fraudulent inducement theory, basically. We entered the transaction, therefore we're fraud. But a babysitter wasn't receiving a loan or a financial instrument. The babysitter was offering labor for payment, which doesn't seem to be terribly analogous to what we have here. It's different, but I would suggest that it's the same concept. I am running out of time. I would like to touch on one thing that we overly complicated, frankly, in our briefs and that's the money laundering count. Money laundering requires laundering proceeds of specified illegal activity. Here, the specified illegal activity were two counts, 7 and 8. Wire fraud. This circuit since 1989 has said wire fraud is completed upon a wire. Each time a wire is sent is a separate criminal act, unlike, for example, healthcare fraud where the scheme itself is the crime. Here, the money that was laundered on the face of the indictment, the undisputed proof, had nothing to do with the two wire transactions that form the basis of counts 7 and 8. It's simply on its face is not proceeds. In our brief, we got into a big debate about when the wire fraud ends and the wire fraud theory was it ended, the wire was the deposit of money into Kimberly Owens' account, and that's the same money laundering that they're claiming, but here... I'm not following that at all. There could be a wire transmission consisting of a communication in furtherance of the money laundering activity. The money doesn't have to be transferred by wire to have money laundering, or make. Well, I guess you're talking about money laundering count. Are you talking about wire fraud as opposed to simply the money laundering count? There are two counts of wire fraud, and there's a separate count of money laundering. What are you addressing? Is it money laundering or the wire fraud? You make a good point. You're correct that different forms of wires can form the basis of wire fraud, but in these two counts, 7 and 8, the alleged wire fraud was a deposit into Kimberly Owens' bank account on two specific dates. That was the completion of the quote specified illegal activity that formed the basis of the money laundering count. The money laundering count was the wire that formed the basis of 8. So by definition, it obviously couldn't have concerned the same proceeds, but it's undisputed that the money that was deposited that is at issue in the wire fraud is different money than was at issue in these two wire fraud counts. And so I agree with you, but because they chose to go in that direction in these particular counts, I think there's... Well, if you want to continue, you'll have to take time from your rebuttal time. I will take time from my... Well, I'll step down here. All right. You'll have your rebuttal. May it please the Court, Amanda Gregory for the United States. I'll start by addressing some of the points raised by my colleague on the other side. First, a minor correction. He stated that the jury instructions had old law under Sadler and said that it was necessary to show laws. In fact, the jury instructions, which are on document 231 and page ID 3587, specify that it's not necessary to show that the bank suffered a financial loss. Many of the points that Mr. Meyer was making with respect to Kousisis were these analogies from a babysitter that were found in two concurrences. Kousisis was a 9-0 decision. Those concurrences weren't necessary to get the decision. The holding was that fraudulent inducement is a valid form of fraud, which was consistent with some prior cases in the circuit and is consistent with the theory in Counts 1 and 2 of our indictment and the proof at trial. With respect to his arguments regarding fraud for Counts 3 and 4 and Counts 7 and 8 and relating to whether it is a property right, he said that here the creditor was not deprived of any interest. Here the property right is the right to collect on the promissory notes that existed or the right to collect under the judgment. His interpretation of deprivation is just not consistent with either the Supreme Court case law or the case law in this circuit. In Pasquantino, which is one of the cases we cited in our brief, is showing that the right to collect money was a valid property interest under the common law and under the fraud statutes. The property right at issue there was Canada's right to collect a tax for alcohol that was being taken across the border. The alcohol was basically being smuggled. By smuggling the alcohol, you're not extinguishing this right as a legal matter, which seems to be what he's saying. They could still find out about it, collect it some other way, but they're thwarting Canada's efforts to collect. In this circuit, in Maddox, which was a few years after Pasquantino, this court similarly held that the right to collect state cigarette taxes was a valid property right. The defendants at issue weren't even the people who were going to be responsible for paying that tax. It was people downstream. The fraud that was committed was they failed to file these reports that would have alerted the state to who these consumers were who would be responsible for the tax. Deprivation doesn't mean you have to extinguish the right to collect or somehow take away this right to collect. It can be the thwarting of the collection efforts. I think he would say, well, that reads the property interest as a right to successfully collect, whereas the property interest is just a right and money that you have an entitlement to and you are allowed to assert or try to protect that right. What's your response to that? Again, I would point to the two cases I just cited and other cases and just say that's just not how it's been interpreted. One of the cases we cited was a Fourth Circuit case, Colton, which was very similar to this case. In Pasquantino, there was also a reference to debtors collecting or to defraud being debtors hiding assets during the collection process. This, I think, again, goes towards disruption or thwarting what would otherwise be successful collection attempts. In the Colton case, I think we cite a couple more other circuits, but those are very similar in terms of the debtors trying to hide property from creditors so that they will settle for less than is due. With respect to his argument on money laundering, I'm not 100% sure that I was following it correctly, but the argument that he made in the brief was basically that the wire fraud hadn't been completed at the time the money laundering occurred. Because it hadn't been completed, he didn't use the word merger, I think, possibly because the merger case law in this circuit would be unfavorable. But basically, they were the same and there was no money laundering because the wire fraud wasn't complete. Now it seems to say that the wire fraud is basically disassociated from the money laundering or perhaps the specific counts we chose as wires were completed too long ago or too far in the future. I think this is a completely different argument that was raised in his briefs and under the circuit's case law, if it's not raised in the opening brief, it's forfeited. But I don't think that is consistent with money laundering. And the count seven wire, I think, is the earlier wire. So the wire fraud can be complete when that earlier wire occurred, but then everything after that under the most restrictive definition would be proceeds. And the steps to get the garnishment and to get these checks that were generated from Mortenson Family Dental, those had been all taken at the beginning of the scheme, so it wasn't necessary for them to keep taking further action to get additional proceeds. With that, are there any questions from the court on other issues that were not raised by my colleague on the other side? Well, we'll ask you if there are. In the meanwhile, you can continue with the argument on that, but you're not required to continue if you don't have additional argumentation. For most issues, we are satisfied for standing on our brief, but I will just go over some points for the... Now, what's our standard of review on these various charges? Some of these issues are on appeal on plain-error review. What issues are we looking at on plain-error review and which are not on plain-error review? All of the sufficiency of the indictment or sufficiency of the underlying charges are plain-error review because those were not raised below. And looking at the sufficiency of the indictment under plain-error review, everything must be construed most liberally in favor of sufficiency. At least one of the sufficiency of the evidence arguments, it's not plain-error review, but it's manifest miscarriage of justice because it wasn't raised below. I believe that was the arguments with respect to adequacy of the evidence of concealment. The argument that, with respect to the testimony from Nygaard and Miller, who are the attorneys, one who worked at Fidelity National, which was the parent company of Commonwealth, and Miller, who represented DCR and then Commonwealth in litigation, that was not an objection raised below, so that is on plain-error. The jury instructions are plain-error at best, and one of them could be invited error with respect to the sentencing issues. Most of those, at least most of the objections to the enhancement, which were raised below, I do think some of the specific arguments have changed in a way that it might be subject to plain-error review just based on an argument made in the reply brief or forfeited, but one of those is the obstruction of justice enhancement and the way that in the reply brief it's characterized more as a procedural objection. I mean, the judge here did ask the Bostic question. There were no procedural – But the judge didn't, I mean, would you concede, counsel, that we have a pretty stringent procedural set of requirements for finding obstruction and that, you know, you have to find, number one, false testimony, number two, testimony was willful, number three, that it concerned a material matter and put that on the record? Would you concede that at a minimum didn't occur? Yes, Your Honor, and you made that very clear in Jackson that did come out after our trial, but the district court here was not as specific and in fact, you know, did not make the falsity finding. What she found was she took two statements, both under oath by the defendant. She said these are directly contradictory, so one of them must be false. I would argue that that particular circumstance might be a unique reason to not apply that stringent standard of making a finding a falsity when there are both statements by the defendant, but at any rate, I mean, one, as I said, that the framing of that is more the judge not making the specific findings more came in the defendant's reply, so we would say it's forfeited, but at any count, it is harmless error because the statements, both statements from the trial and from the deposition are false and they were material because they're clearly tied into the garnishment, which was one of the key issues related to multiple counts at the trial. And the district judge said the sentence would issue in the same way? Yes, and she... Because of the obstruction enhancement? Well, she said regardless of what the guidelines were, and she went very thoroughly through the 3553A factors to say that regardless of whatever the sentence, or whatever the sentencing range was, it would be the same sentence based on the expansiveness of the defendant's fraud, the things that she had seen at trial and sentencing, and after trial, some of the conduct that had come out through jail calls, so she did state that that would be the same regardless. One other sentencing issue that seemed... The argument seemed a little different in the defendant's reply versus opening or earlier sentencing was on the expunged sentence, and it seemed in the reply it was making more of a Havis argument. Again, we think this was raised for the first time there, and it was largely undeveloped, so I don't even know that it's something this court needs to consider, but we would also say that that is not a properly preserved argument. You know, with regard to this sentence, the enhancement of the defendant's fraud was a fraud of the sentence in part depends on the amount of loss, including attorney fees. Do you have anything more to say about where the government and the defendant differs in calculating the amount of loss for purposes of enhancing the sentence, or do you just want to rely on your brief in that regard? I think our brief is very clear and supported by case law in this circuit, at least on the proximate cause issue that the defendant raises in terms of the loss that the bank experienced from selling the properties and not recovering what it had paid out initially. With respect to attorney's fees, I don't believe there was anything on point in this circuit, but the Derossier case, which we cited from the Eighth Circuit, I think is probably one of the better cases for us. And I do think, you know, the judge looked at it two ways in the case, you know, that it wasn't, the attorney's fees were both caused by the conduct in counts 1 and 2 and also in 3 and 4. I think most of the cases on the issue from other circuits look at conduct similar to counts 1 and 2, but if you look at the way counts 3 and 4 are structured, really part of the defendant's goal is to drive up attorney's fees to sort of incentivize the creditors to try to settle for less than they deserve. I see that I'm out of time. If there are no further questions, I would urge you to affirm the conviction and sentence. Thank you very much. Will your rebuttal vary us off? I was not involved in the underlying trial, got involved in sentencing, but one issue that was preserved was on 7 and 8, and that is the question of materiality, and it does relate to some of the sentencing issues, too. But the undisputed proof was a creditor. What is the materiality issue that you're referring to? The allegation was that Mr. Owen lied in a deposition where a creditor was seeking to move for 7 and 8. The undisputed proof was that the creditor had been paid on a title policy before the deposition and before even they moved for summary judgment. The theory at trial was that the insurance company, who never made an appearance, never told anybody it was involved, never filed a claim, that a secret insurance company was really the defrauded. That is inconsistent with Kentucky law, frankly, and federal law. You cannot assert a claim without appearing. As a matter of law, the secret insurance company never asserted a claim. The entity that was taking the deposition objectively, which Justice Thomas in this case, the materiality has to be judged from an objective standard, an objective creditor that had already been paid, would not be taking a deposition, would not be asking questions. And as a matter of law, it's just... You're actually introducing new arguments here on rebuttal instead of responding to the government's argument. You may be a bit outside the scope of what you should be presenting on rebuttal. Can I say one more thing that she did raise, Your Honor? Sure. The consequential damage is attorney's fees. The court said, because there was fraud in inducing the loan, I am going to find, and this was after we had objected, said, you got to tie the attorney's fees to alleged fraudulent activity. We broke for the day. We came back and the court said, because there was fraud in the inducement, all of the subsequent attorney's fees are included in law. So that is consequential. Those are consequential and those are not recoverable. There were errors in the calculations and because the sentencing calculation was erroneous, notwithstanding what the court said about I would have sentenced him to this 12-year sentence anyway, I think that the court should address the errors in sentencing and at a minimum, we think the entire conviction should be reversed, but at a minimum, remand for a new sentencing.